## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| JACKSONVILLE URBAN LEAGUE, INC., <br> 903 West Union Street <br> Jacksonville, FL  32202 <br><br>     Plaintiff, <br><br> v. <br><br> Alex M. Azar II, in his official capacity as <br> Secretary of the United States Department <br> of Health and Human Services, <br> 200 Independence Avenue, SW <br> Washington, DC 20201 <br><br>     Defendant <br><br> Serve:  Jessie K. Liu <br>          United States Attorney <br>          United States Attorney's Office <br>          555 Fourth Street, N.W. <br>          Washington, DC 20530 <br><br> Serve:  Jeff Sessions <br>          Attorney General of the United States <br>          U.S. Department of Justice <br>          950 Pennsylvania Avenue, N.W. <br>          Room B-103 <br>          Washington, DC 20530-0001 | CASE No.: |

## **COMPLAINT FOR DAMAGES AND JURY TRIAL DEMAND**

**COMES NOW** the Plaintiff, the Jacksonville Urban League, Inc. (hereinafter "JUL" or "Plaintiff"), via its undersigned counsel, and hereby sues Alex M. Azar II, in his official capacity as Secretary of the United States Department of Health and Human Services, for violations of Plaintiff's Constitutional Rights and, in support thereof, states:

1

## INTRODUCTION

1) The Plaintiff brings this action to enforce its Constitutional Rights for the improper summary suspension of its Head Start funding and programing without any notice and an opportunity to be heard.

## THE PARTIES

2) The Plaintiff, The Jacksonville Urban League, Inc., is a community based non-profit agency that is a leading advocate for promoting access to quality education, economic opportunity, civic engagement, health and wellness by assisting African Americans, as well as other underserved communities, to secure economic self-reliance, parity, power, competition and civil rights.

3) Alex M. Azar II, is Secretary of the United States Department of Health and Human Services (hereinafter "Defendant" or "HHS"), which is a federal agency charged by Congress to, among other things, administer Head Start programming.

## JURISDICTION

4) This Court has jurisdiction pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971); 28 U.S.C. §§ 1331, 1346 and 1361, as this action arises under the Constitution and laws of the United States, and the damages claimed exceed $75,00.00, excluding pre and post judgment interest, reasonable costs and attorney's fees.

5) This Court has further jurisdiction to award attorney's fees under Equal Access to Justice Act, section 2412.

6) Venue is proper in this district under 28 U.S.C. § 1391(e). Defendant is a United States agency and a substantial part of the events, actions, or omissions giving rise to these claims are occurring in this judicial district.

## BACKGROUND FACTS

### a. JUL's Head Start Programming

7) Since being awarded by HHS, the Plaintiff successfully administered combined Head Start and Early Head Start programs in Duval County, Jacksonville, Florida, for approximately 17 years.

8) Over the 841 square mile metropolitan area of Jacksonville, Plaintiff served over 2000 children each week day during the school year, including summer programming, at twenty-six (25) locations, including the City of Baldwin, Florida, with a staff of well over 300 people. During its administration of the Head Start programs, the JUL prepared in excess of 34,000 children to enter school.

9) The mission of the JUL Head Start and Early Head Start programming was to provide free, focused development of school readiness skills for children, (ages 3 to 5 in Head Start and infant to 2 years in Early Head Start) from low income households by delivering services that grow their cognitive, emotional, physical and social skills within a safe, nurturing, engaging, enjoyable, and secure learning environment.

10) JUL's management of Head Start implemented a system designed to "further child-development, support parental roles, and promote self-sufficiency." 45 C.F.R. § 1304.3(a)(8).

11) JUL's Head Start staff identified and utilized a child's unique strengths and assessed services for each child's needs. JUL further supported and serviced the resources, priorities, and concerns of the participant families, to meet the needs of each parent's child. 45 C.F.R. § 1304.3 (a) (1)(i), (ii). The programs employed over 350 employees focused on the educational, health and transportation needs of the participating children and their families.

### b. HHS' Wrongful Suspension of JUL's Head Start Programming

12) Following 17 successful years, on or about April 13, 2013, the HHS summarily and immediately suspended JUL's Head Start funding and programing, and commandeered JUL's Head Start administrative offices, computers, files, locations and staffing - all without warning or any other notice as required by statutory and constitutional law.

13) In the summary suspension process, HHS searched, seized, commandeered, destroyed and otherwise abandoned Plaintiff's property.

14) HHS acted without authority in summarily suspending JUL without notice and an opportunity to be heard because no *bona fide* emergency existed under 1302.5(a), as required by law.

15) Federal law created the Head Start program, and therefore Head Start agencies must respect certain basic Constitutional rights such as Plaintiff's right to be free of unreasonable search and seizure, and right to continued funding and a system of due process before such funding can be withdrawn.

16) Specifically, summary suspension without notice is limited to emergency situations only: "procedures to assure that financial assistance under this subchapter *shall not be suspended*, *except in emergency situations*, unless the recipient agency has been given reasonable notice and opportunity to show cause why such action should not be taken." 42 U.S.C.A. § 9841(a)(2); 45 C.F.R. § 1302.5; See 45 C.F.R. § 1303.11 (*emphasis added*); 1303.12 (a)(3).

17) In plain language, Defendant was required to have afforded Plaintiff notice and an opportunity to be heard *before* a suspension of any financial assistance. *Id.*

18) The one exception to the notice and show cause hearing rule is in the instance of a *bona fide* emergency. *Id.*

19) Notwithstanding the foregoing, the HHS summarily suspended JUL's programming - without any notice or a *bona fide* emergency – violating federal Constitutional law.

### c. Procedural History

20) Following JUL's immediate request for an informal review, which was heard in Atlanta, Georgia, JUL administratively appealed the decision before the United States Department of Appeals Board ("DAB").

21) A DAB trial was held in Washington D.C. The summary suspension and ultimate termination of the programming was upheld by the Department of Appeals Board in a final determination.

22) JUL timely appealed the HHS administrative determination to the U.S. Court of Appeals, District of Columbia.

23) The administrative appeal was thereafter transferred to U.S. District Court, District of Columbia, and was ultimately dismissed without prejudice in and around February 2018, ending the administrative process.

24) The instant action ensued.

## COUNT I
## FOURTH AMENDMENT BIVENS ACTION

25) The Plaintiff re-avers and incorporates its allegations from paragraphs 1 through 24, as if fully stated herein.

26) This action is brought pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

27) The Plaintiff enjoyed Fourth Amendment right to be free of unreasonable search and seizure of person and property by Defendant.

28) The HHS search and seizure of JUL's Head Start funding, offices, files, computers, furnishings, staff and facilities breached the regulations and statues governing HHS, and is a *per se* Fourth Amendment violative.

29) As a direct and proximate result of HHS' conduct, JUL has been damaged.

30) All conditions prerequisite to this action have either been satisfied or waived.

31) There is no other remedy at law.

**WHEREFORE** the Plaintiff seeks judgment against the Defendant for all compensatory damages, including pre and post judgment interest, along with reasonable attorney's fees and costs.

## COUNT II
## FITH AMENDMENT BIVENS ACTION

32) The Plaintiff re-avers and incorporates its allegations from paragraphs 1 through 24, as if fully stated herein.

33) This action is brought pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

34) As a Head Start programming grantee Plaintiff enjoyed a property interest

35) Plaintiff also enjoyed Fifth Amendment right to be free of any deprivation of its property rights by Defendant without due process of law.

36) HHS' taking of JUL's property, i.e., its program funding, Head Start offices, files, computers, furnishings, staffing and facilities without due process violated its Fifth Amendment rights.

37) . JUL has been damaged as a direct and proximate result of HHS' conduct.

38) All conditions pertinent to this action have either been satisfied or waived.

39) There are no other remedies at law.

**WHEREFORE** the Plaintiff seeks judgment against the Defendant for all compensatory damages, including pre and post judgment interest, along with reasonable attorney's fees and costs.

## JURY TRIAL DEMAND

40) The Plaintiff demands a jury on all issues so triable.

Respectfully submitted,

/s/*Donald M. Temple, Esq.*[1]
1310 Street, N.W.
Suite 750
Washington, D.C. 20005,
Telephone: 202-628-1101
Fax: 202-628-1149
Email: dtemplelaw@gmail.com.

---

[1] The undersigned expects to file a *Pro Hac Vice* motion on behalf of Attorney Earl M. Johnson, Jr., of Jacksonville, Florida who has served as counsel heretofore for Plaintiff.